**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT A. ZANDER,<br><br>  Plaintiff,<br><br>  v.<br><br>DEPARTMENT OF JUSTICE<br>  and<br>FEDERAL BUREAU OF PRISONS,<br><br>  Defendants. | Civil Action No. 10-2000 (JDB) |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Robert A. Zander was previously incarcerated in a Bureau of Prisons facility in Butler, North Carolina.  In June 2010, Zander sent requests to the Department of Justice under the Freedom of Information Act ("FOIA") for information relating to his incarceration.  In response to his requests, the Department of Justice and Bureau of Prisons ("defendants") released some records to Zander, but withheld other material.  Zander has sued under FOIA to challenge the withholding of this material.  He also alleges that the defendants have failed to adequately search for material responsive to his requests and that they are actively involved in a cover-up of criminal conduct involving the Bureau of Prisons.

Now before the Court are the parties' cross-motions for summary judgment.  On September 15, 2011, the Court referred this matter to Magistrate Judge John M. Facciola for a report and recommendation.  Magistrate Judge Facciola issued a Report and Recommendation

recommending that each side's motion be granted in part and denied in part.[1]  More specifically, Magistrate Judge Facciola recommended that a video be turned over to Zander with "redactions" (the blurring of certain images in the video), ordered additional documents to be turned over to him for in camera inspection, recommended that summary judgment be granted for defendants with respect to the adequacy of the search, and recommended that other portions of Zander's FOIA requests be denied for failure to exhaust administrative remedies.  Defendants turned over the documents for in camera inspection, and, upon review, Magistrate Judge Facciola further recommended that the documents be released with certain redactions.

Both Zander and defendants have timely filed objections to the Magistrate Judge's Report and Recommendation.  Defendants contend that both the video and the other documents fall under applicable FOIA exemptions and therefore should not be released to Zander.  Zander argues that he is entitled to a Vaughn index with respect to the documents turned over for in camera review.  Zander also contends that the defendants' search for documents was inadequate.

The Court accepts the Magistrate Judge's recommendation regarding the portions of Zander's FOIA requests that should be denied for failure to exhaust administrative remedies, as neither party has objected to this recommendation.  For the reasons described below, the Court accepts the Magistrate Judge's recommendation with respect to the adequacy of the search and rejects Zander's request for a Vaughn index.  The Court accepts with one modification the Magistrate Judge's recommendation regarding the documents submitted for in camera review.  These documents will be ordered released as recommended with one additional redaction.  Finally, the Court rejects the Magistrate Judge's recommendation with respect to disclosure of

---

[1] Although defendants filed two separate motions, one labeled as a motion to dismiss or, in the alternative, for summary judgment and the other labeled as a motion for summary judgment, in part, Magistrate Judge Facciola construed the parties' motions as cross-motions for summary judgment.  The Court sees no need to do otherwise.

the video, finding that the video is properly withheld because its release could endanger BOP officials.

I.  Background

The Court will not reiterate the full factual background of this case, which is described in the Report and Recommendation.  See Report and Recommendation (Sept. 16, 2011) [Docket Entry 33] ("R&R") at 1-2.  Zander made FOIA requests to the Department of Justice relating to his incarceration in a Bureau of Prisons facility.  The Bureau of Prisons conducted a search and released certain documents to him, but claimed exemptions apply to other materials, barring their disclosure.  See R&R at 4-6.  Two types of materials remain at issue, having been the subject of the parties' timely objections to the Report and Recommendation.[2]  First, the Bureau of Prisons has withheld a video of Zander being forcibly removed from his prison cell on March 17, 2008. R&R at 4, 6.  Defendants argue that disclosure of the video would endanger the physical safety of BOP employees by revealing the equipment, tactics, and procedures used in removing inmates from cells.  See Defs.' Objections to the Mag. J.'s Report and Recommendation (Sept. 30, 2011) [Docket Entry 34] ("Defs.' Objections I") at 3-8.  Second, BOP withheld a group of documents either authored by or directed to defendants in a civil action being pursued by Zander in the Eastern District of North Carolina.  R&R at 1, 4-6.  Most of the documents are letters and signed forms from BOP employees to the Department of Justice, indicating that the employees have been sued by Zander and seek representation by the Department.  See id. at 10-11.  The remainder of the documents are two e-mails to and from BOP employees, BOP attorneys, and

---

[2] Zander argues that defendants' objections to the Magistrate Judge's Report and Recommendation are untimely.  See Pl.'s Resp. in Opp'n to Defs.' Objections to Mag. J.'s Sept. 16, 2011 Report and Recommendation [Docket Entry 39] ("Pl.'s Resp.") at 1-2.  On September 30, 2011, the deadline for filing objections to the Report and Recommendation, the Court ordered the pending motions to be terminated because the Court believed no objections had been filed. See Minute Order of Sept. 30, 2011 [Docket Entry 36].  In fact, defendants had filed objections shortly before the Court terminated the pending motions, so the Court then vacated the termination.  See Minute Order of Oct. 12, 2011.  Hence, the objections were timely filed.

DOJ attorneys.  See id.  The Magistrate Judge reviewed all these documents in camera and then recommended that they be released with certain redactions.  See id. at 11-14.  Defendants argue that these documents should be withheld entirely under the attorney-client privilege or the attorney work product doctrine.  See Defs.' Objections to the Mag. J.'s Recommended Redactions and Production of Documents Submitted for In Camera Review (Dec. 1, 2011) [Docket Entry 45] ("Defs.' Objections II") at 3-12.  Zander also objects to defendants' failure to provide a Vaughn index for the material submitted for in camera review, as well as the overall adequacy of defendants' search.  See Pl.'s Objections to Mag. J.'s Report and Recommendation (Nov. 28, 2011) [Docket Entry 42] ("Pl.'s Objections") at 2-8.

II.  Legal Standard

a.  Summary Judgment

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" that it believes demonstrate the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c); see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the

"mere existence of a scintilla of evidence" in support of its position.  <u>Id.</u> at 252.  By pointing to

the absence of evidence proffered by the non-moving party, a moving party may succeed on

summary judgment.  <u>Celotex</u>, 477 U.S. at 322.  "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted."  <u>Anderson</u>, 477 U.S. at 249-50

(citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence

on which the jury could reasonably find for the [non-movant]."  <u>Id.</u> at 252.

b.  <u>The Freedom of Information Act</u>

The Freedom of Information Act, 5 U.S.C. § 552, requires federal agencies to release all

records responsive to a proper request except those protected from disclosure by any of nine

enumerated exemptions set forth at 5 U.S.C. § 552(b).  A district court is authorized "to enjoin [a

federal] agency from withholding agency records or to order the production of any agency

records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B); <u>see also</u> <u>Kissinger</u>

<u>v. Reporters Comm. for Freedom of the Press</u>, 445 U.S. 136, 139 (1980).  The agency has the

burden of proving that "each document that falls within the class requested either has been

produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements."

<u>Goland v. Cent. Intelligence Agency</u>, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and

quotation marks omitted); <u>accord</u> <u>Maydak v. DOJ</u>, 218 F.3d 760, 764 (D.C. Cir. 2000).  The

district court may award summary judgment to an agency solely on the basis of information

provided in affidavits or declarations that describe "the documents and the justifications for

nondisclosure with reasonably specific detail, demonstrate that the information withheld

logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith."  <u>Military Audit Project v. Casey</u>,

656 F.2d 724, 738 (D.C. Cir. 1981); accord Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir.

1973).

c.  Magistrate Judge Recommendations

Under Federal Rule of Civil Procedure 72(b), once a magistrate judge has entered his

recommended disposition, a party may file specific written objections.  The district court "must

determine de novo any part of the magistrate judge's disposition that has been properly objected

to." Fed. R. Civ. P. 72(b)(3).  The district court may then "accept, reject, or modify the

recommended disposition."  Id.

III.  Discussion

a.  Disclosure of Video

BOP has withheld from disclosure a video of Zander being forcibly removed from his

prison cell on March 17, 2008.  Zander has received a report of the incident, which included the

names of the BOP officers involved.  R&R at 6.  The Magistrate Judge recommended that the

video be edited "in a way that will obliterate the faces" of the officers involved and then released,

concluding that "[o]nce that is done, the safety of these law enforcement officers would in no

way be further compromised" and that "obliteration of their faces would protect their privacy."

Id. at 8-9.  The Magistrate Judge also rejected BOP's concerns regarding the expense of editing

the video and the allegedly minimal value of the video after editing.  See id. at 8-10.

Defendants now object to the disclosure of the video with the recommended "redactions."

Defendants contend that the Magistrate Judge's analysis with respect to FOIA exemption 7(F)

was in error regarding the video.  See Defs.' Objections I at 3-7.  That provision, 5 U.S.C. §

552(b)(7)(F), exempts from FOIA disclosure "records or information compiled for law

enforcement purposes, but only to the extent that the production of such law enforcement records

or information  . . . could reasonably be expected to endanger the life or physical safety of any individual."  Defendants maintain that "the videotape sought by Plaintiff shows BOP's Calculated Use-of-Force Team enter the Plaintiff's cell, apply restraints, and remove him from the cell, depicting the equipment, tactics, movements, and procedures used during the incident."  Defs.' Objections I at 6.  Defendants argue that "producing the video, even with the faces of the officers obscured, would nonetheless disclose the equipment, tactics, and procedures utilized by the BOP Calculated Use-of-Force Team" and that "such disclosure could reasonably be expected to endanger the lives or physical safety of any BOP officers who subsequently utilize those techniques and equipment in the course of their duties."  Id. at 5.  Furthermore, defendants contend that the video should be withheld because obliterating the protected information would be burdensome to the agency and the remaining information would be of little value.  Id. at 7-8.

Zander contends that defendants' argument against disclosure is undermined by BOP policy, which contemplates that cell extractions will be recorded "to defend against unfounded allegations and eliminate the unwarranted use of force."  Pl.'s Resp. at 2 (quotation marks omitted).  Zander also maintains that the video should be released because it will reveal "flagrantly unlawful" conduct and because the public has a right to know what type of force officers employ.  Id. at 2-4.

The Court finds that the video is properly withheld under FOIA exemption 7(F). Exemption 7(F) most clearly applies to protect law enforcement officials from disclosure of information that could prove threatening to them.  See, e.g., Blanton v. DOJ, 182 F. Supp. 2d 81, 86-87 (D.D.C. 2002), aff'd, 64 Fed. Appx. 787 (D.C. Cir. 2003); Pfeffer v. Dir., U.S. Bureau of Prisons, 1990 U.S. Dist. LEXIS 4627, at *4-5 (D.D.C. Apr. 17, 1990) (approving withholding of

information by BOP relating to escape plans and smuggling of weapons into prisons).[3]  It has

also been said that courts should, "within limits, defer to the agency's assessment of danger."

Linn v. DOJ, 1995 WL 631847, at *9 (D.D.C. Aug. 22, 1995) (citing Gardels v. CIA, 689 F.2d

1100, 1104-1105 (D.C. Cir. 1982)).

       Such deference is not necessary here because the Court concludes that the agency's

assessment of the possible danger to law enforcement officials from disclosing the video is

abundantly reasonable.  Removing prisoners from their cells presents clear dangers to the law

enforcement officers who are charged with the task.  Disclosure of a recording of a "cell

extraction" presents the possibility that other prisoners will learn the methods and procedures

utilized by BOP officials, and that this information might be used to thwart the safe application

of these techniques in the future.  The Court does not mean to suggest that plaintiff himself

presents such a danger, but dissemination to the public at large does present clear risks to law

enforcement officials.  With respect to Zander's argument that the purpose of recording the

procedure is to guard against "unfounded allegations and eliminate the unwarranted use of

force," the Court finds that, even if this is the reason (or part of the reason) why BOP records the

procedure, disclosure via FOIA is still not warranted.  The policy as represented by Zander need

not be construed to demand public disclosure in order to be effective.  Recording the procedures

may allow supervisory officials within prisons to verify prisoner allegations of misconduct and

to ensure that cell extractions are not performed unnecessarily forcefully.  Furthermore, the

disclosure of videos during litigation may be possible without broader dissemination to the

---

[3] Although "FOIA is to be broadly construed in favor of disclosure, and its exemptions are to be narrowly
construed," Audubon Soc. v. U.S. Forest Service, 104 F.3d 1201, 1203 (10th Cir. 1997), courts have countenanced
the withholding of information under exemption 7(F) when the disclosure could arguably endanger people who are
not members of law enforcement or even referenced in the material.  See, e.g., Living Rivers, Inc. v. U.S. Bureau of
Reclamation, 272 F. Supp. 2d 1313, 1321 (D. Utah 2003) (approving withholding of maps of Hoover and Glen
Canyon dams because disclosure could endanger downriver residents in the event of a terrorist attack).  But see
ACLU v. Dep't of Def., 543 F.3d 59, 82 (2d Cir. 2008) (denying withholding when the government articulated the
danger as being to "the public at large," rather than a "specific, identifiable set of individuals").

public, through the use of, for example, sealed docket entries or protective orders.  These

mechanisms of ensuring the limited distribution of information, and therefore the protection of

the safety of prison staff, are not available in the FOIA context.  Finally, the Court agrees with

defendants that the video will be of little or no value to anyone once information about cell

extraction procedure is segregated out, so providing the video after removing this information

does not make sense.

b.  Disclosure of Documents

The Magistrate Judge also considered BOP's response to Zander's request for "all

communications to or from the defendants in Zander v. Lappin [the lawsuit Zander brought

against BOP employees in North Carolina] regarding the subject matter . . . of that litigation."

R&R at 10-14 (alteration in original).  BOP located documents responsive to this request in a

"litigation file" and characterized the documents in three categories:  (1) letters from the BOP

employees who were sued by Zander to DOJ, seeking legal representation; (2) correspondence

between BOP employees and BOP counsel pertaining to the employees' involvement in the

lawsuit; and (3) e-mail communications between DOJ attorneys and BOP employees and counsel

pertaining to the status of the litigation.  Id. at 10-11.  BOP withheld these documents on the

ground that "any disclosure of such records could result in the disclosure of attorney client

privileged information and/or attorney work product, including facts regarding defendants['']

personal involvement in the allegations asserted."  Id. at 11 (alteration in original).  The

Magistrate Judge found this response inadequate under the requirements to describe each

document withheld and segregate the exempt portion of documents from non-exempt portions.

Id. at 11.  He concluded that "[s]ince only the most general description of the content of the file

is provided, I cannot possibly determine whether every document in it was in fact prepared for

trial or in anticipation of litigation." Id. at 12.  He further noted that "the work product privilege is subdivided into fact and opinion work product and the former may yield" under certain circumstances and also that "communications by the client that only state that which everyone already knows . . . are not privileged." Id. at 12-13 (citing Mead Data Cent., Inc. v. Dep't of Air Force, 566 F.2d 242, 254 (D.C. Cir. 1977)).  Accordingly, the Magistrate Judge ordered that the documents be produced for in camera review. Id. at 13-14.  He then reviewed the documents and recommended that they be released to Zander with some redactions, which he indicated to BOP and the Court.  The Court has reviewed the original documents and the recommended redactions.

The majority of the reviewed documents are letters and accompanying signed forms from BOP employees to the Department of Justice, indicating that the employees have been sued by Zander and seek representation by the Department.  There are also two e-mails to and from BOP employees, BOP attorneys, and DOJ attorneys.  It appears that the Magistrate Judge has intended to redact any material from the documents that does not fall into the category of information "which everyone already knows," see R&R at 13 — that is, he has redacted the non-public information, leaving the public information for disclosure.  To summarize without revealing any protected detail, the redacted information consists of each employee's description of Zander's allegations and the employee's account of his or her participation (or lack thereof) in the alleged events.

Defendants object to the recommendation to release the documents as redacted.  See Defs.' Objections II at 3-9.  They argue that the disclosure letters and accompanying forms should be withheld under FOIA Exemption 5, which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Defendants contend that the

letters and forms constitute confidential communications protected by the attorney-client privilege. Defs.' Objections II at 3-9. They maintain that the Magistrate Judge erred in relying on <u>Mead Data</u> for the proposition that "[t]he privilege does not allow the withholding of documents simply because they are the product of an attorney-client relationship" and that "[i]t must also be demonstrated that the information is confidential." <u>Mead Data</u>, 566 F.2d at 253. Defendants argue that more recent precedent — specifically, <u>In re Ampicillin Antitrust Litigation</u>, 81 F.R.D. 377 (D.D.C. 1978) — recognizes a different rule. Defs.' Objections II at 6-7. Furthermore, defendants contend that the two e-mail communications between counsel and BOP employees should not be disclosed because they "are protected by the attorney-client and attorney[ ]work product privileges in that they constitute statements by a client intended to be confidential for purposes of seeking counsel as well as statements prepared by counsel in contemplation of litigation." Defs.' Objections II at 9-12.

At the outset, it is worth noting that not much really hangs on the outcome of defendants' objection — at least with respect to the materials at issue in the present case — because the documents (as redacted) hardly contain much information at all. As to the "representation letters" and accompanying signed forms, the Court finds that the documents must be disclosed to the extent the information has already been made public, with proper redactions for other non-public material. Defendants' contention that the rule articulated in <u>Mead Data</u> was somehow modified by <u>In re Ampicillin</u> is simply incorrect. <u>In re Ampicillin</u> addressed the attorney-client privilege in the context of civil discovery and explicitly distinguished <u>Mead Data</u> and the FOIA context:

> In <u>Mead Data</u>, the court was examining the applicability of the attorney-client privilege to an exemption five claim under the Freedom of Information Act (FOIA). After stating that the privilege does have "a proper role to play in exemption five cases," the court said that for the privilege to apply "[i]t must also

be demonstrated that the information is confidential."  However, the court made
clear that it was addressing the attorney-client privilege's role in exemption five
cases and not in any other context. . . . The court then proceeded to mention some
of the policy considerations particular to a FOIA case, that would not be
applicable to an antitrust case such as the case at bar, such as the overall
congressional intent of ensuring comprehensive public access to government
records.

In re Ampicillin, 81 F.R.D. at 388 n.21 (quoting Mead Data, 566 F.2d at 252, 255, 255 n.28)

(alteration in original).  Hence, In re Ampicillin essentially stated that it was not departing from

Mead Data.  See also State of Maine v. Dep't of Interior, 298 F.3d 60, 71-72 (1st Cir. 2002)

("The DOI erroneously assumes that the requirement of client communicated confidentiality is

satisfied merely because the documents are communications between a client and attorney. . . . 'It

must also be demonstrated that the information is confidential.'" (quoting Mead Data, 566 F.2d at

253)).  But see Wishart v. Comm'r of Internal Revenue, 1998 U.S. Dist. LEXIS 13306, at *16-18

(N.D. Cal. Aug. 6, 1998) (applying the exemption to correspondence between government

employees and the Justice Department without distinguishing between FOIA and civil

discovery).

      To be sure, there is some tension between Mead Data's statement that "discovery rules

should be applied to FOIA cases only 'by way of rough analogies,'" 566 F.2d at 252 (quoting

EPA v. Mink, 410 U.S. 73, 86 (1973)), and the plain language of the statute, which explicitly

exempts from disclosure documents "which would not be available by law to a party . . . in

litigation with the agency," 5 U.S.C. § 552(b)(5).  See W. Trails, Inc. v. Camp Coast to Coast,

139 F.R.D. 4, 10 (D.D.C. 1991) (Attridge, Mag. J.) (discussing Mead Data and In re Ampicillin

and concluding that "[i]t is unclear, therefore, whether the same standard of confidentiality

applies to claims of attorney-client privilege in the context of civil discovery" as under FOIA

Exemption 5); see also Martin v. Office of Special Counsel, 819 F.2d 1181, 1184-86 (D.C. Cir.

1987) ("[T]he exact relationship between ordinary civil discovery and Exemption (b)(5),

particularly the application of discovery privileges under the exemption, has bedeviled the courts

since the Act's inception.").  The statute's plain text seems to indicate that the attorney-client

privilege ought to be fully incorporated in the FOIA context.  But since the D.C. Circuit's

decision in Mead Data has not been revisited, the Court will accept the Report and

Recommendation's basic premise that the letters and forms must be disclosed, with appropriate

redactions for non-public information under the rationale of Mead Data.

      With respect to the two e-mails, the question is somewhat different because the material,

according to defendants, falls into the narrower category of "attorney work product," rather than

the broader attorney-client privilege. See Defs.' Objections II at 9-12.  "The work-product

doctrine shields materials 'prepared in anticipation of litigation or for trial by or for another party

or by or for that other party's representative (including the other party's attorney . . .).'" Judicial

Watch, Inc. v. DOJ, 432 F.3d 366, 369 (D.C. Cir. 2005) (quoting Fed. R. Civ. Pro. 26(b)(3)(A));

see also Mervin v. FTC, 591 F.2d 821, 825 (D.C. Cir. 1978) ("The attorney work product

privilege protects 'against disclosure of the mental impressions, conclusions, opinions, or legal

theories of a party's attorney or other representative concerning the litigation.'" (quoting Fed. R.

Civ. Pro. 26(b)(3)(B))).  The D.C. Circuit has stated that any document "prepared in anticipation

of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by

the work product doctrine and falls under exemption 5," with no mention of the Mead Data

caveat that the information must be shown to be confidential.  Tax Analysts v. IRS, 117 F.3d

607, 620 (D.C. Cir. 1997).  In any case, the distinction between the attorney work product

doctrine and attorney-client privilege more generally is not of significance here because the

Court finds that the two e-mails are not attorney work product.

The Court finds that the two e-mails do not fall under the attorney work product doctrine because the e-mails are communications to and from clients regarding litigation, rather than actual preparation by attorneys for litigation (or anticipated litigation).  "The work product doctrine does not extend to every written document generated by an attorney; rather, work product covers only documents prepared in contemplation of litigation."  <u>Senate of the Commonwealth of P.R. v. DOJ</u>, 823 F.2d 574, 586-87 (D.C. Cir. 1987) (quotations omitted).  The work product doctrine exists to ensure "[p]roper preparation of a client's case," <u>Hickman v. Taylor</u>, 329 U.S. 495, 511 (1947); it is described under the subheading "Trial Preparation" in Federal Rule of Civil Procedure 26(b).  The documents at issue here <u>relate</u> to litigation — Zander's case in North Carolina — but, in the Court's view, after having reviewed the documents, it would not be fair to say they constitute "preparation" for litigation, as they merely summarize the case very generally in lay terms and instruct BOP employees on how to receive representation in the case.  Such communications do fall under the broader attorney-client privilege, but they are not the "work product" of an attorney contemplated for protection by that doctrine.  <u>Cf.</u> <u>Judicial Watch</u>, 432 F.3d at 367-68, 370 (finding that e-mail communications about whether and how to file an amicus brief fall under the work product doctrine).

Since the communications fall under the broader attorney-client privilege, the Magistrate Judge properly applied the <u>Mead Data</u> rule that the information should only be withheld if it is confidential, and then reviewed the documents for any such material and recommended release.  The Court agrees with this assessment, with one exception.  The Court believes that the second sentence of the second paragraph of the e-mail dated March 18, 2010, is not publicly available information, as this sentence is a characterization of the recipient's involvement in the matter.  Hence, this information is confidential and must also be redacted.  The Court otherwise accepts

the recommendation from the Magistrate Judge and will order the documents released as

redacted by the Magistrate Judge with this one additional redaction.

c.  Adequacy of Search

        The Magistrate Judge recommends granting summary judgment to BOP regarding the

adequacy of its search.  R&R at 15.  The Magistrate Judge considered and rejected Zander's

"wild allegations of a BOP cover up to conceal its behavior," as well as Zander's argument that

the uncovering of a document that BOP did not immediately disclose reveals the inadequacy of

the search that was performed.  R&R at 14-15.  Zander objects to this recommendation,

reiterating his argument that the discovery of previously undisclosed additional documents by

BOP shows that the search was inadequate and his allegations of "a continuing concatenation of

criminal conduct" by defendants.  Pl.'s Objections at 5-8.

        The Court will accept the Magistrate Judge's recommendation with respect to this

objection.  That BOP failed to turn up a limited number of responsive documents in its search

does not show the search was inadequate.  See Iturralde v. Comptroller of Currency, 315 F.3d

311, 315 (D.C. Cir. 2003) (citing Nation Magazine v. Customs Serv., 71 F.3d 885, 892 n. 7 (D.C.

Cir. 1995); Steinberg v. DOJ, 23 F.3d 548, 551 (D.C. Cir. 1994)).  Furthermore, "'purely

speculative claims about the existence and discoverability of other documents'" cannot overcome

the presumption of good faith accorded agency affidavits representing a thorough search.

SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer

Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

d.  Vaughn Index

        Finally, Zander objects to the Report and Recommendation because the Magistrate Judge

ordered defendants to turn over documents for in camera review, rather than provide a Vaughn

index with respect to the documents.  Under Vaughn, 484 F.2d at 826-28, agencies "resisting

FOIA disclosure [must] index the information they are withholding and [] provide non-

conclusory justifications for doing so."  Roth v. DOJ, 642 F.3d 1161, 1172 (D.C. Cir. 2011).

Zander accurately states the rule regarding a Vaughn index:  "an agency in possession of material

it considers exempt from FOIA [must] provide the requestor with a description of each document

being withheld, and an explanation of the reason for the agency's nondisclosure."  Oglesby v.

Dep't of Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996).  But the reason why an agency must

provide a Vaughn index is to enable a FOIA requestor to challenge the withholdings in court.

Here, that function has been served by in camera review and the Report and Recommendation, as

well as this Memorandum Opinion.  Both the Magistrate Judge and now the Court have reviewed

the documents in their entirety and ruled on whether and to what extent the exemptions apply.

And the documents have been fully described for plaintiff through this process.  Having received

a full explanation of what the documents are and why they are being withheld or disclosed with

redactions, Zander no longer has a right to a Vaughn index, which would provide no further

information.  Although in camera review is not favored, see Hayden v. N.S.A., 608 F.2d 1381,

1387 (D.C. Cir. 1979), the Court sees no reason at this point to overrule the Magistrate Judge's

approach.  Hence, the Court rejects this objection to the Report and Recommendation.

IV.  Conclusion

        For these reasons, the Court accepts the Magistrate Judge's recommendation regarding

the adequacy of defendants' search and the portions of Zander's FOIA requests that should be

denied for failure to exhaust administrative remedies.  The Court rejects Zander's objection

regarding a Vaughn index; under the circumstances, a Vaughn index is not required.  The Court

also rejects the Magistrate Judge's recommendation regarding disclosure of the video; the video

may be withheld.  No further action is required on these matters.   The Court accepts with one

small modification the Magistrate Judge's recommendation with respect to the documents

submitted for in camera review.  Defendants will be ordered to release these documents to

Zander as redacted by the Magistrate Judge with the one additional redaction described above.

Accordingly, the cross-motions for summary judgment will each be granted in part and denied in

part and the Court will order the redacted documents to be released to Zander.  A separate order

has been issued on this date.


_____/s/_____
JOHN D. BATES
United States District Judge

Dated:  June 20, 2012