**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ROBERT A. ZANDER,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 10-2000 (JDB)** |
| **DEPARTMENT OF JUSTICE** | |
| **and** | |
| **FEDERAL BUREAU OF PRISONS,** | |
| **Defendants.** | |

## MEMORANDUM OPINION, ORDER & INDICATIVE RULING

Before the Court is a motion for reconsideration of its earlier ruling in this Freedom of Information Act (FOIA) case. Plaintiff Robert A. Zander, who was previously incarcerated in a Bureau of Prisons facility, requested information relating to his incarceration under FOIA. In response to his requests, the Department of Justice and Bureau of Prisons ("defendants") released some records but withheld other material. Zander sued. After the parties filed motions and cross-motions for summary judgment, the Court referred the matter to a Magistrate Judge, who then issued a Report and Recommendation recommending that each side's motion be granted in part and denied in part. In a June 20, 2012 Memorandum Opinion and Order, this Court reviewed the Magistrate Judge's recommendations and, as to the material subject to the motion for reconsideration, accepted them with one minor modification.[1] The Court then stayed the Order pending appeal.

---

[1] The Magistrate Judge recommended disclosure (with some redactions) of a video of Zander being removed from his cell, but this Court rejected that recommendation and ordered that video withheld. That, and certain other less important rulings, are not at issue in the motion for reconsideration.

Defendants have now filed a Rule 60(b) motion seeking reconsideration of the Court's ruling insofar as it orders disclosure of documents defendants assert are protected by attorney-client privilege, Memorandum Opinion 9-15 (June 20, 2012) [Docket Entry 51]. See Fed. R. Civ. P. 60(b)(1), (6).[2] Upon careful review of the parties' new submissions and based on the Court's own research, the Court believes that this is a circumstance where reconsideration as to part of the earlier decision would be appropriate. As explained below, the Court would hence grant, in part, defendants' motion if the D.C. Circuit remanded the case.

## JURISDICTION

Although neither defendants nor Zander address the question of jurisdiction, this Court must do so independently. The Court does not have jurisdiction to provide defendants relief at this time. A day after filing their motion for reconsideration, defendants filed a notice of appeal, which "confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." United States v. DeFries, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (per curiam) (internal quotation marks omitted). While the pendency of a Rule 60 motion suspends the notice of appeal if that motion is filed within 28 days after entry of judgment, defendants filed their Rule 60 motion on August 15, 2012, 56 days after judgment was entered; accordingly, the notice of appeal in this case was effective when filed. See Fed. R. App. P. 4(a)(4)(B)(i) (pendency of motions listed in Rule 4(a)(4)(A) suspends notice of appeal); Fed. R. App. P. 4(a)(4)(A)(vi) (listing motion "for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered."); see also Nat'l Black Police Ass'n v. District of Columbia, 108 F.3d 346, 353 n.3 (D.C. Cir. 1997) ("Rule 60(b) motion . . . only suspends a

---

[2] They also assert that the two emails are protected by work-product immunity. The Court rejected that argument in its June 20th Opinion and defendants have pointed to no error in that ruling.

notice of appeal if it is filed [the number of days designated by Federal Rule of Appellate

Procedure 4(a)(4)] after the judgment is entered").

When a timely motion for relief is made and the Court lacks authority to grant it because

an appeal has been docketed, the Federal Rules of Civil Procedure permit the Court to "state . . .

that it would grant the motion if the court of appeals remands for that purpose." Fed. R. Civ. P.

62.1(a)(3); see also Hoai v. Vo, 935 F.2d 308, 312 (D.C. Cir. 1991) ("District Court may

consider the 60(b) motion and, if the District Court indicates that it will grant relief, the appellant

may move the appellate court for a remand in order that relief may be granted."). Accordingly,

this opinion shall indicate how the Court would rule if the case were remanded by the D.C.

Circuit.

## STANDARD OF REVIEW

Rule 60(b) allows the Court to relieve a party from "a final judgment, order, or

proceeding" in a limited set of circumstances, including "mistake, inadvertence, surprise, or

excusable neglect." Fed. R. Civ. P. 60(b)(1). The Court may also relieve a party for "any other

reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "Relief under Rule 60(b)(1) motions is rare;

such motions allow district courts to correct only limited types of substantive errors." Hall v.

CIA, 437 F.3d 94, 99 (D.C. Cir. 2006). Rule 60(b)(6), too, sets "a very high bar": "courts should

grant Rule 60(b)(6) motions only in 'extraordinary circumstances.'" Kramer v. Gates, 481 F.3d

788, 791, 792 (D.C. Cir. 2007) (quoting Ackermann v. United States, 340 U.S. 193, 199 (1950)).

Ultimately, however, "the district judge, who is in the best position to discern and assess all the

facts, is vested with a large measure of discretion in deciding whether to grant a Rule 60(b)

motion." Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv., 72 F.3d 897, 903 (D.C.

Cir. 1996) (quoting <u>Twelve John Does v. District of Columbia</u>, 841 F.2d 1133, 1138 (D.C. Cir.

1988)).

## <u>ANALYSIS</u>

At issue are documents related to a civil action Zander filed in connection with his

incarceration. They consist of several letters (and accompanying signed forms) from Bureau of

Prisons employees seeking legal representation as well as two emails, one sent by an employee

to the attorney and another sent by the attorney to several employees. Defendants assert that

these communications would be protected by the attorney-client privilege in the civil discovery

context, and so should be deemed covered by that privilege under FOIA exemption five.

Accordingly, they contend that the D.C. Circuit's decision in <u>Mead Data Central, Inc. v. United</u>

<u>States Department of the Air Force</u>, 566 F.2d 242 (D.C. Cir. 1977), which they read as

establishing a narrower attorney-client privilege in the FOIA context, does not control. Upon

further review, the Court agrees that all but one of the documents are protected from disclosure,

although not entirely for the reasons defendants suggest.

FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters

which would not be available by law to a party other than an agency in litigation with the

agency." 5 U.S.C. § 552(b)(5). The test under this provision, known as exemption five, is

"whether the documents would be routinely or normally disclosed upon a showing of relevance."

<u>FTC v. Grolier Inc.</u>, 462 U.S. 19, 26 (1983) (internal quotation marks omitted). The D.C. Circuit

first interpreted the attorney-client privilege in the FOIA context in <u>Mead Data</u>. <u>See</u> 566 F.2d

242. Considering exemption five's applicability to several documents authored by attorneys and

communicated to agency employees, <u>see</u> <u>id.</u> at 249-50, the court recognized "that the attorney-

client privilege has a proper role to play in exemption five cases." <u>Id.</u> at 252. After discussing the

purposes of the privilege in the civil discovery context, the court stated that "[w]e see no reason why this same protection should not be extended to an agency's communications with its attorneys under exemption five." Id. Nonetheless, it ordered that the agency disclose the documents unless it could make a further showing that the documents were based on confidential information supplied by the employees because "[i]n the federal courts the attorney-client privilege does extend to a confidential communication from an attorney to a client, but only if that communication is based on confidential information provided by the client." Id. at 254 (footnote omitted).

In so holding, Mead Data interpreted the attorney-client privilege in general, rather than importing a new limitation for the FOIA context. As subsequent D.C. Circuit cases have recognized, the Mead Data limitation that the "communication '[must be] based on confidential information provided by the client' . . . applies generally to attorney-client privilege cases whether or not in the context of the FOIA." Brinton v. Dep't of State, 636 F.2d 600, 603-04 (D.C. Cir. 1980) (quoting Mead Data, 566 F.2d at 254); see also In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984) (non-FOIA case citing Mead Data for the proposition that "[c]ommunications from attorney to client are shielded if they rest on confidential information obtained from the client").[3] Giving the same meaning to attorney-client privilege in both the discovery and FOIA contexts comports with subsequent holdings that FOIA's plain language "point[s] clearly, unequivocally, to the incorporation of all civil discovery rules into FOIA Exemption (b)(5)." See Martin v. Office of Special Counsel, 819 F.2d 1181, 1185 (D.C. Cir.

---

[3] At the outset of its exemption five discussion, the Mead Data opinion does state that "discovery rules should be applied to FOIA cases only by way of rough analogies," 566 F.2d at 252 (internal quotation marks omitted). But in discussing privileges, and specifically the attorney-client privilege, Mead Data concludes that the exemption "encompasses the attorney-client privilege" in its entirety. See id.

1987); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 802 (1984) (refusing "to look beyond the plain statutory language" of exemption five).

Because Mead Data interprets the attorney-client privilege in general, it is consistent with subsequent cases that stress that FOIA may not be used as a supplement to civil discovery—as it could be if the attorney-client privilege were less protective under FOIA. See Weber Aircraft Corp., 465 U.S. at 801 ("[R]espondents' contention that they can obtain through the FOIA material that is normally privileged would create an anomaly in that the FOIA could be used to supplement civil discovery. We have consistently rejected such a construction of the FOIA."); Martin, 819 F.2d at 1186 ("allow[ing] FOIA to be used as a supplement to civil discovery . . . undercut[s] the exemption's apparent function . . . [and] it also runs afoul of the decisions of the Supreme Court"). Indeed, if certain attorney-client communications were subject to disclosure under FOIA, there would be little point in protecting them in civil discovery, for attorneys and clients—knowing that communications are subject to revelation through a FOIA request—would still inhibit their discussions. Cf. Upjohn Co. v. United States, 449 U.S. 383, 393 (1981) ("An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."). Mead Data, then, is consistent with subsequent D.C. Circuit and Supreme Court decisions, and remains good law that the Court must apply here.

Mead Data's confidential information requirement, however, is relevant to only one of the disputed documents: that limitation applies only to communications from an attorney to a client, not those from a client to an attorney. The attorney-client privilege, at its core, protects communications from a client to an attorney. See Fisher v. United States, 425 U.S. 391, 403 (1976) ("Confidential disclosures by a client to an attorney made in order to obtain legal

assistance are privileged. The purpose of the privilege is to encourage clients to make full disclosure to their attorneys." (citations omitted)). The question hence arises "whether privileges are two-way streets[,] [f]or example, as a holder of the attorney-client privilege, may the client bar testimony not only of what the client told the attorney but also of what the attorney told the client." Edward J. Imwinkelried, The New Wigmore: Evidentiary Privileges § 6.6.4 (2012). Courts now overwhelmingly agree that the privilege protects some statements by the attorney, although they vary "as to the precise extent of the application of the privilege to the professional's statements." Id.; see also Mead Data, 566 F.2d at 254 n.25 (discussing and rejecting possibility that attorney-client privilege should be "narrowly construed to apply only to communications of the client and not to the advice and opinions provided by his attorney"). In Mead Data, the D.C. Circuit resolved that very question of the privilege's scope, holding that "[t]here is an additional limitation on the attorney-client privilege . . . for those communications that originate from the lawyer rather than from the client. Mead Data stated that when the attorney communicates to the client, the privilege applies only if the communication 'is based on confidential information provided by the client.'" Brinton, 636 F.2d at 603 (emphasis added) (quoting Mead Data, 566 F.2d at 254); see also Imwinkelried § 6.6.4 & n.113 (citing Mead Data as well as subsequent D.C. Circuit cases as adopting "[t]he intermediate view" "that the privilege attaches to any communication by the professional that, in a broad sense, is 'based upon a privileged communication from the client'"). The D.C. Circuit laid out the resulting framework in another FOIA exemption five case:

> The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services. The privilege also protects communications from attorneys to their clients if the communications rest on confidential information obtained from the client. In the governmental context, the "client" may be the agency and the attorney may be an agency lawyer.

Tax Analysts v. IRS, 117 F.3d 607, 618 (D.C. Cir. 1997) (emphasis added) (citing Mead Data, 566 F.2d at 254) (other citation and internal quotation marks omitted).

Applying that framework to the documents at issue here, the letters from Bureau of Prisons employees requesting legal representations are protected from disclosure. They are "confidential communications from clients to their attorneys made for the purpose of securing legal advice or services," which "[t]he attorney-client privilege protects" categorically, regardless of the confidentiality of the information the communications contain. See Tax Analysts, 117 F.3d at 618; see also Upjohn, 449 U.S. at 396 ("The client cannot be compelled to answer the question, 'What did you say or write to the attorney?'"(internal quotation marks omitted)). The email dated May 21, 2009, was sent from an employee to an agency attorney, and so it is protected for the same reasons.

The analysis differs for the final document, an email from an attorney to several employees dated March 18, 2010. Because it is an attorney's communication to his clients, the email falls within Mead Data's additional limitation and is only privileged if it rests on confidential information obtained from the clients. This email generally does not rest on such information, and is hence subject to disclosure. As the Court previously noted, however, one sentence of the email (the second sentence of the second paragraph) almost certainly rests on confidential information obtained from the client. It must therefore be redacted. See Tax Analysts, 117 F.3d at 619-20 (the "particular portions" of documents that "may reveal confidential information transmitted by [employees]" remain privileged). Because this sentence is separable from the remainder of the email, which is not itself privileged, redaction is appropriate. See 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt

under this subsection."). <u>Compare</u> <u>Judicial Watch, Inc. v. DOJ</u>, 432 F.3d 366, 371-72 (D.C. Cir. 2005) (holding that "segregability is not required" for document protected by work-product immunity because, unlike a privilege, work-product immunity protects the facts themselves, so the document is immune in its entirety).

In short, the Court concludes that reconsideration is warranted here. The documents at issue, except for most of the March 18, 2010, email, are properly protected under the attorney-client privilege as it applies in civil discovery and hence under FOIA exemption five as well.

<u>**CONCLUSION**</u>

For the reasons indicated above, the Court would amend, in part, its June 20, 2012 Memorandum Opinion and Order. It is hereby

**ORDERED** that [56] defendants' motion for reconsideration is **GRANTED IN PART** insofar as it seeks an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1(a)(3); it is further

**ORDERED** that, as the Court lacks authority to grant further relief unless the court of appeals remands the case, the motion is **HELD IN ABEYANCE** in all other respects; and it is further

**ORDERED** that, in accordance with Federal Rule of Civil Procedure 62.1(b), defendants shall promptly notify the Circuit Clerk of this ruling.

**SO ORDERED**.

/s/
_____
JOHN D. BATES
United States District Judge

Dated:  <u>October 31, 2012</u>